IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELANIE F. OSBORNE-MOORE, ) | |
| ) | |
| PLAINTIFF, ) | No. 3:14-cv-01309 |
| ) | Judge Campbell/Brown |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| DEFENDANT. ) | |

To: The Honorable Todd J. Campbell, United States District Judge

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (the record) (Docket Entry 16) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I.     Procedural History

Plaintiff protectively filed for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on April 05, 2010. (Docket Entry 12, p. 137).[1] She claimed an onset date of February 01, 2010 and disability due to: poor circulation in both legs, stroke, numb right leg, depression, high cholesterol, and high blood pressure. (Docket Entry 12, p. 137; 142).  The Commissioner denied her claims on initial review and reconsideration. (Docket Entry12, pp. 59-69). Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Docket Entry 12, p. 72). On August 28, 2012, Plaintiff appeared before ALJ, H. Scott Williams. (Docket Entry 12, p. 36). Also appearing were Robert Parker (Mr. Parker), Plaintiff's attorney; Gary

---

1 Page numbers referring to the record herein reflect the Bates Stamp.

Sturgill, the vocational expert (VE); and George Wade (Mr. Wade), a witness. (Docket Entry 12, p. 36). The ALJ found that Plaintiff was not disabled under Title II or Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 416(i), 423(d), 1382(c). (Docket Entry 12, p. 11). On April 16, 2014, the Appeals Council denied Plaintiff's request for review. (Docket Entry 12, p. 1).

On June 16, 2014, Plaintiff, proceeding *pro se* and *in forma pauperis*, timely brought the instant action. (Docket Entry 1). Also on June 16, 2014, the District Judge referred this case to the Magistrate Judge. (Docket Entry 3). Defendant filed its Answer and the record. (Docket Entry 11-12). On September 17, 2014, Plaintiff filed a "Motion for Judgment," which the Magistrate Judge construes as a Motion for Judgment on the Administrative Record. (Docket Entry 16).[2] To that end, the Magistrate Judge construes Plaintiff's Motion as seeking judicial review of the final decision of the Social Security Administration (SSA), through its Commissioner, as set out by the ALJ under 42 U.S.C. 405(g) and 1383(c). Defendant has filed a Response in Opposition. (Docket Entry 17). Therefore, the matter is properly before the Court.

## II. Review of the Record

### A. Relevant Medical Evidence

Relevant evidence begins on February 01, 2010. *See* 20 C.F.R. §§ 404.1512(d)(2) and 416.912(d)(2). On February 17, 2010, Plaintiff presented to Nashville General Hospital "for evaluation of complaints of blockage in her legs . . . [and] numbness in her toes and feet . . . ." (Docket Entry 12, p. 337). The provider recommended that Plaintiff start medication to relieve her symptoms, that she have an annual study to evaluate her circulation, that she release her records for the provider to review, and that she stop smoking. (Docket Entry 12, p. 338). On

---

2 After a review of the file in this matter, it appears that Plaintiff's "Motion for Judgment" is a Brief in Support of a Motion for Judgment on the Administrative Record. On August 26, 2014, the Court had ordered Plaintiff to file a Motion for Judgment on the Administrative Record, "supported by a brief" within 30 days. (Docket Entry 13, p. 1). Therefore, Plaintiff's filing was timely. However, Plaintiff failed to file a separate Motion. Nonetheless, Plaintiff's Brief clearly states that she seeks relief and Defendant has filed a Response in Opposition. (Docket Entry 17).

February 25 and March 22, 2010, Plaintiff presented to Madison Family Clinic for follow up treatment of pain in her toes and legs. (Docket Entry 12, pp. 199-202). On October 30, 2010, Plaintiff presented to Summit Medical Center Emergency Room with joint pain. (Docket Entry 12, p. 222). The provider noted that she had diabetic neuropathy in both of her feet. (Docket Entry 12, p. 223). On November 26, 2010, Plaintiff presented to Skyline Medical Center Emergency Room (Skyline ER) with pain in her toe and was later discharged as stable. (Docket Entry 12, p. 284). On December 03, 2010, Plaintiff presented to Nashville General Emergency Room with chest pain and was later discharged as stable. (Docket Entry 12, pp. 318; 333).

Throughout February, May, September and October 2011, Plaintiff presented to Madison Family Clinic for follow up of her diabetes, high cholesterol, back problems, high blood pressure, obesity, and smoking. (Docket Entry 12, pp. 400-411). On October 21, 2011, Plaintiff presented to Skyline ER and was treated for "blue toe syndrome."[3] (Docket Entry 12, p. 383).

On January 09, 2012, Plaintiff presented to Eastland Memorial Emergency Room after a motor vehicle accident. (Docket Entry 12, p. 341). Radiology reports of her spine, hip, pelvis, and right forearm showed "no evidence of fracture or dislocation." (Docket Entry 12, p. 347; 349-52). Radiology reports of her chest and brain were "normal." (Docket Entry 12, p. 348; 353). She received follow up care at Madison Family Clinic. (Docket Entry 12, p. 397). She was treated by a chiropractor and dismissed for failure to comply with the treatment plan. (Docket Entry 12, p. 433). On January 22, 2012, Plaintiff presented to Skyline ER with chest pain, was discharged, and then received follow up care at Madison Family Clinic. (Docket Entry 12, pp. 360; 394). On March 26, 2012, Plaintiff was admitted for ongoing chest pain and ultimately underwent coronary artery bypass surgery the next day. (Docket Entry 12, pp. 412; 453).

---

3 Dorland's Illustrated Medical Dictionary 1823 (Elsevier 2012) (1900) (Blue toe syndrome: "a blue color of the toes, sometimes bilateral, with skin necrosis and ischemic gangrene, resulting from arterial occlusion by emboli, thrombi, or injury.").

**B.     Consultative Examiner Assessments on behalf of Disability Determination Services**

On October 16, 2010, Dr. Brannon Mangus completed a medical consultative examination and reported no abnormalities. (Docket Entry 12, p. 220). On November 11, 2010, Deborah E. Doineau, Ed.D. (Dr. Doineau) completed a psychological consultative evaluation and concluded that "[a]lthough [Plaintiff] does appear to have depression and some anxiety, these symptoms do not appear to significantly impact her functioning." (Docket Entry 12, p. 231). Dr. Doineau also completed a medical source statement of ability to do work related mental activities. (Docket Entry 12, p. 232). She found that Plaintiff had mild limitations in carrying out simple instructions, and in understanding and remembering complex instructions. (Docket Entry 12, p. 232). She found that Plaintiff had moderate limitations in carrying out complex instructions. (Docket Entry 12, p. 232). On November 19, 2010, Jenaan Khaleeli, Psy.D. completed a psychiatric review of the record and found that Plaintiff had mild limitations in activities of daily living, social functioning, and concentration, persistence or pace. (Docket Entry 12, p. 247).

On February 05, 2011, Dr. Carolyn Parrish completed a physical RFC assessment. She found that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, sit, stand or walk for six hours in a normal eight hour day, and push or pull for unlimited periods. (Docket Entry 12, p. 310). She found that Plaintiff should avoid concentrated exposure to extreme cold or heat. (Docket Entry 12, pp. 311-14). On September 22, 2012, Dr. Mark Josovitz completed a post-hearing consultative examination. (Docket Entry 12, p. 497). He summarized that he found "zero physical findings to corroborate with the subjective complaints." (Docket Entry 12, p. 499). He noted that the orthopedic examination was "without limitation" and that he found "no limits to [Plaintiff's] activities." (Docket Entry 12, p. 499).

### C.     Plaintiff and Witness Testimony

On August 28, 2012, Plaintiff's attorney gave an opening statement to the ALJ. (Docket Entry 12, pp. 38-39). He stated that Plaintiff had a triple bypass, had "several admissions for chest pain and coronary artery disease," and had "been diagnosed with peripheral vascular disease in her legs as well as peripheral neuropathy bilaterally." (Docket Entry 12, p. 38). Next, Plaintiff testified that she has a tenth grade education. (Docket Entry 12, p. 39). Plaintiff testified that she has diabetes and takes the medication, Metformin. (Docket Entry 12, p. 40). She testified that she has problems with her feet "where they hurt or they turn purple." (Docket Entry 12, p. 41). She testified that her toes tingle "all the time" and that she has had these symptoms since she had a stroke. (Docket Entry 12, p. 41). Plaintiff also testified that she has blockages in her legs. (Docket Entry 12, p. 42).

Plaintiff testified that she worked as a truck driver and that she "had to stop doing that because I could [not] drive all those hours without hurting when I get off work." (Docket Entry 12, p. 42). She testified that she had a stroke in 2007 and that her right side is still numb. (Docket Entry 12, p. 43). She testified that she has swelling in her ankles and legs twice a week. (Docket Entry 12, p. 43). She testified that since she has had bypass surgery, she still has chest pains, "but not as much." (Docket Entry 12, p. 44). She testified that she cannot afford most of her medications and that she was unable to attend rehabilitation after her surgery due to lack of insurance. (Docket Entry 12, p. 45).

Plaintiff testified that her back hurts "all the time" and described a motor vehicle accident in which she was involved. (Docket Entry 12, pp. 45-46). She testified that she can sit for twenty minutes at a time. Confusingly, Plaintiff testified that after twenty minutes, she has pain in her back and stated, "[m]y pain level is really high, so I guess I could take so much pain. Or I'm just

faking it." (Docket Entry 12, p. 46). Plaintiff went on to state that she can stand for fifteen or twenty minutes. (Docket Entry 12, p. 46).

Next, Mr. Wade testified that he is Plaintiff's fiancé and that over the past several years, he has seen Plaintiff with "[s]hortness of breath, feet turning purple." (Docket Entry 12, p. 48). He testified that he helps her dress, cook, and clean. (Docket Entry 12, p. 48). He testified that Plaintiff has chest pain and difficulty sleeping because of the pain. (Docket Entry 12, pp. 48-49). He testified that Plaintiff stays in bed to try to relieve the pain. (Docket Entry 12, p. 50).

### D. Vocational Expert Testimony

The ALJ reviewed the past work of Plaintiff. (Docket Entry 12, p. 51). This included work as an office manager, which is considered sedentary,[4] skilled[5] work with an SVP of 7. (Docket Entry 12, p. 51). She also worked as a truck driver, which is medium and semiskilled with an SVP of 4. (Docket Entry 12, p. 51). She was also a production supervisor, which is light and skilled with an SVP of 7. (Docket Entry 12, p. 51). She was a hand packager, which is medium and unskilled. (Docket Entry 12, p. 51). Finally, she was a computer peripheral equipment operator, which is light and semiskilled with an SVP of 4. (Docket Entry 12, p. 51).

The ALJ then asked the VE to "assume the limitations that are stated in [record] exhibit 4F, and also assume the limitations in [record] exhibit 7F . . . ." (Docket Entry 12, p. 51).[6] The VE clarified that there were "mental limitations noted in 4F . . . checked as moderately limited." (Docket Entry 12, p. 52). The VE testified that these "would preclude the skilled work that [he]

---

[4] 20 C.F.R. §§ 404.1567 and 416.967 ("To determine the physical exertion requirements of work in the national economy, [jobs are classified] as *sedentary, light, medium, heavy, and very heavy*.") (emphasis added).

[5] Social Security Ruling 00-4P, 2000 WL 1898704 ("The Dictionary of Occupational Titles (DOT) lists a **specific vocational preparation (SVP)** time for each described occupation. Using the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.") (emphasis added).

[6] The Magistrate Judge notes that record exhibit 4F is the psychological consultative evaluation by Deborah E. Doineau, Ed.D. and record exhibit 7F is the physical RFC assessment by Dr. Carolyn Parrish.

noted earlier," referring to Plaintiff's former employment. (Docket Entry 12, p. 52). The VE also testified that "the semiskilled and unskilled work . . . would be available." (Docket Entry 12, p. 52). The ALJ noted that "moderate is defined as more than a slight limitation, but is still able to function satisfactorily." (Docket Entry 12, p. 52). The ALJ asked the VE, "with that definition, would your testimony be the same?" (Docket Entry 12, p. 52). The VE testified that considering that definition, "all the past work would be permitted." (Docket Entry 12, p. 52).

The ALJ asked the VE, "[w]hat statements, if any, did [Plaintiff] make that would preclude all work activity?" (Docket Entry 12, p. 52). The VE testified that Plaintiff's testimony "reporting pain and the resulting effect on concentration, persistence, and pace, as well as testimony regarding exertional limitations, very likely a person would not be able to persist for eight hours, given those statements." (Docket Entry 12, p. 52). Finally, the VE testified that if Plaintiff was off task for 10 percent of the day, that would "eliminate all competitive employment . . . ." (Docket Entry 12, p. 53).

### III. Analysis

#### A. Standard of Review

The issue before the Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), is limited to whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards. *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 434 (6th Cir. 2010) (unpublished opinion) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carrelli*, 390 F. App'x at 434 (quoting *Cutlip*, 25 F.3d at 286). The Court "may not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility." *Carrelli*, 390 F. App'x at 434. If there is "substantial evidence" in the record that supports the ALJ's decision and the ALJ applied the correct legal standard, then the Court must affirm the final decision, "even if the Court would decide the matter differently, and even if substantial evidence also supports the [Plaintiff's] position." *Carrelli*, 390 F. App'x at 434 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc)).

## B. Administrative Proceedings

Disability is defined for Title II DIB and Title XVI SSI claims as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1505 and 416.905. The ALJ uses a 5-step evaluation for both DIB and SSI claims to determine whether the Plaintiff meets this definition of "disabled."

i. If the plaintiff is engaged in substantial gainful activity, the Court will find that the plaintiff is not disabled.

ii. If the plaintiff *does not* have a severe medically determinable physical or mental impairment meeting the duration requirement or a combination of such impairments, the Court will find that the plaintiff is not disabled.

iii. If the plaintiff *does* have an impairment(s) that meets or equals one of the listings of impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (Appendix 1) and meets the duration requirement, the Court will find that the plaintiff is disabled.

iv. The court considers the plaintiff's RFC and past relevant work. If the plaintiff can still perform her past relevant work, the Court will find that she is not disabled.

v. The Court considers the plaintiff's RFC, age, education, and experience to determine if the plaintiff can perform work *other than* past relevant work. If the plaintiff can make an adjustment, the Court will find that she is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). The plaintiff has the burden of proof for steps 1 to 4. *Carrelli*, 390 F. App'x at 435. The burden shifts to the ALJ at step 5, where the

ALJ must "identify a significant number of jobs in the economy that accommodate the [plaintiff's] RFC and vocational profile." *Carrelli*, 390 F. App'x at 435 (citation omitted).

### C. Notice of Decision

On January 07, 2013, the ALJ made the findings of fact and conclusions of law below.

1. The claimant met the insured status requirements of [the Act] through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since February 01, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder (not otherwise specified) and anxiety disorder (not otherwise specified) (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but . . . she is limited to simple and detailed (1-3 step) instructions and tasks.

6. The claimant is capable of performing past relevant work as a computer peripheral equipment operator and as a hand packer. This work does not require the performance of work-related activities precluded by the claimant's [RFC]. (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in [the Act], from February 01, 2010, through the date of this decision. (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Docket Entry 12, pp. 16; 23-24; 27; 29). The ALJ also made the specific decision:

1. Based on the application for a period of disability and [DIB] protectively filed on April 05, 2010, the claimant is not disabled under sections 216(i) and 223(d) of [the Act].

2. Based on the application for [SSI] protectively filed on April 05, 2010, the claimant is not disabled under section 1614(a)(3)(A) of [the Act].

(Docket Entry 12, p. 29).

## IV. Claims of Error

The Magistrate Judge liberally construes Plaintiff's claims in light of Plaintiff's *pro se* status. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). As an initial matter, Plaintiff asks the Court to consider her "past, present and future medical records and conditions." (Docket Entry 16, p. 1). She alleges that since "the last decision," she has had two more heart attacks and a stent placed, and that she has sciatic nerve problems. (Docket Entry 1, p. 2). The Magistrate Judge is not unsympathetic to these difficulties. However, the issue now is whether there is substantial evidence in the record to support the ALJ's determination. *Carrelli*, 390 F. App'x at 434. Purported new impairments are not relevant now. *See* 20 C.F.R. §§ 404.620(a) and 416.330; *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) ("[T]he appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment."). Plaintiff is free to file a new claim if she is in an insured status or can otherwise qualify. The Magistrate Judge notes that the ALJ found that Plaintiff met the insured status requirements through December 31, 2011. (Docket Entry 10, p. 16).

### A. Plaintiff's First Claim

Plaintiff argues that she does "not agree with [the] last xamine [sic]" and cites the consultative examination of Dr. Josovitz. (Docket Entry 16, p. 1). The Magistrate Judge construes this as a claim that the ALJ failed in appropriately evaluating the opinion of Dr. Josovitz. Plaintiff also claims that "the last doctor [that] [I] was sent to . . . spent five minutes with me and the whole five minutes he was talking to another gentleman." (Docket Entry 16, p. 2). Plaintiff cites a letter from August 18, 2012 that her attorney wrote prior to her appearance before the ALJ. (Docket Entry 12, pp. 188-190). As best as the Magistrate Judge can tell, the

"last doctor" that Plaintiff saw was Dr. Josovitz during the post-hearing consultative examination on September 22, 2012. (Docket Entry 12, p. 20; pp. 496-507). The only later evidence is a MRI report from October 15, 2012. (Docket Entry 12, p. 508). To the extent that Plaintiff is referring to Dr. Josovitz, this is analyzed below. To the extent that she is referring to another doctor, Plaintiff fails to plead as such.

When an ALJ is determining what weight to assign to a source, he must consider the factors listed in 20 C.F.R. §§ 404.1527 and 416.927. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013). Those factors include: whether there was an examining relationship; the length of the treatment relationship and frequency of examination; the nature and extent of the relationship; supportable medical evidence; evidence that is consistent with the record; and the source's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). The ALJ will also consider these factors when determining what weight to give to the opinion of a non-treating or non-examining source even though those opinions "are never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376.

Here, the record shows that the ALJ ordered the consultative examination with Dr. Josovitz because of "additional evidence admitted into the record following the first consultative examination . . . ." (Docket Entry 12, p. 20). As such, the ALJ was well aware of the nature and extent of the examining, non-treating relationship between Plaintiff and Dr. Josovitz. The ALJ's decision shows that the ALJ considered medical evidence from the examination by Dr. Josovitz, including a physical exam, vascular exam, range of motion testing, and reflex testing. (Docket Entry 12, p. 20). Moreover, the record shows that the ALJ considered the consistency between the record and the opinion of Dr. Josovitz. The ALJ found that the Plaintiff's "medical history is not consistent with her allegations of disability" and noted that Dr. Josovitz likewise found "zero

"last doctor" that Plaintiff saw was Dr. Josovitz during the post-hearing consultative examination on September 22, 2012. (Docket Entry 12, p. 20; pp. 496-507). The only later evidence is a MRI report from October 15, 2012. (Docket Entry 12, p. 508). To the extent that Plaintiff is referring to Dr. Josovitz, this is analyzed below. To the extent that she is referring to another doctor, Plaintiff fails to plead as such.

When an ALJ is determining what weight to assign to a source, he must consider the factors listed in 20 C.F.R. §§ 404.1527 and 416.927. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013). Those factors include: whether there was an examining relationship; the length of the treatment relationship and frequency of examination; the nature and extent of the relationship; supportable medical evidence; evidence that is consistent with the record; and the source's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). The ALJ will also consider these factors when determining what weight to give to the opinion of a non-treating or non-examining source even though those opinions "are never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376.

Here, the record shows that the ALJ ordered the consultative examination with Dr. Josovitz because of "additional evidence admitted into the record following the first consultative examination . . . ." (Docket Entry 12, p. 20). As such, the ALJ was well aware of the nature and extent of the examining, non-treating relationship between Plaintiff and Dr. Josovitz. The ALJ's decision shows that the ALJ considered medical evidence from the examination by Dr. Josovitz, including a physical exam, vascular exam, range of motion testing, and reflex testing. (Docket Entry 12, p. 20). Moreover, the record shows that the ALJ considered the consistency between the record and the opinion of Dr. Josovitz. The ALJ found that the Plaintiff's "medical history is not consistent with her allegations of disability" and noted that Dr. Josovitz likewise found "zero

"last doctor" that Plaintiff saw was Dr. Josovitz during the post-hearing consultative examination on September 22, 2012. (Docket Entry 12, p. 20; pp. 496-507). The only later evidence is a MRI report from October 15, 2012. (Docket Entry 12, p. 508). To the extent that Plaintiff is referring to Dr. Josovitz, this is analyzed below. To the extent that she is referring to another doctor, Plaintiff fails to plead as such.

When an ALJ is determining what weight to assign to a source, he must consider the factors listed in 20 C.F.R. §§ 404.1527 and 416.927. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013). Those factors include: whether there was an examining relationship; the length of the treatment relationship and frequency of examination; the nature and extent of the relationship; supportable medical evidence; evidence that is consistent with the record; and the source's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). The ALJ will also consider these factors when determining what weight to give to the opinion of a non-treating or non-examining source even though those opinions "are never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376.

Here, the record shows that the ALJ ordered the consultative examination with Dr. Josovitz because of "additional evidence admitted into the record following the first consultative examination . . . ." (Docket Entry 12, p. 20). As such, the ALJ was well aware of the nature and extent of the examining, non-treating relationship between Plaintiff and Dr. Josovitz. The ALJ's decision shows that the ALJ considered medical evidence from the examination by Dr. Josovitz, including a physical exam, vascular exam, range of motion testing, and reflex testing. (Docket Entry 12, p. 20). Moreover, the record shows that the ALJ considered the consistency between the record and the opinion of Dr. Josovitz. The ALJ found that the Plaintiff's "medical history is not consistent with her allegations of disability" and noted that Dr. Josovitz likewise found "zero

physical findings to corroborate with the [Plaintiff's] subjective complaints . . . ." (Docket Entry 12, p. 20). Finally, the record shows that the ALJ considered the specialization of Dr. Josovitz. The ALJ noted the contention of Plaintiff's attorney, who argued that Dr. Josovitz was "not qualified to perform a cardiac consultative examination." (Docket Entry 12, p. 20). However, the ALJ explained that he disagreed with this contention and noted that Dr. Josovitz is an "internal medicine specialist." (Docket Entry 12, p. 20).

Therefore, the record provides substantial evidence that the ALJ appropriately evaluated the opinion of Dr. Josovitz.

### B. Plaintiff's Second Claim

Next, Plaintiff refers to her history of special education classes. She also argues that she has anxiety and depression. The record shows that the ALJ found that Plaintiff has depressive disorder and anxiety disorder. (Docket Entry 12, p. 16). Therefore, this is not in dispute. However, based on Plaintiff's assertion about her special education classes, the Magistrate Judge construes this as a claim that the ALJ erred in failing to develop the record regarding Plaintiff's educational history.

Of course, "an [ALJ's] basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appeals before him." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citation and internal quotation omitted). However, although Plaintiff is now *pro* se, Plaintiff was represented during the hearing. Moreover, in the ALJ's decision, he specifically noted that Plaintiff had "limited education" and cited 20 C.F.R. §§ 404.1564 and 416.964, which define education levels. (Docket Entry 12, p. 28). Generally, "7th grade through the 11th grade level of formal education is a limited education" as compared to marginal education which includes "formal schooling at a

6th grade level or less." 20 C.F.R. §§ 404.1564(b)(2)-(3) and 416.964(b)(2)-(3). Finally, in determining that other jobs existed in the national economy that Plaintiff could perform, the ALJ took into consideration Plaintiff's "age, education, work experience, and [RFC] . . . ." (Docket Entry 12, p. 29).

Therefore, the record provides substantial evidence that the ALJ did not fail to develop the record or consider Plaintiff's educational history.

### C. Plaintiff's Third Claim

Plaintiff argues that "[t]he decision made by . . . [D]efendant is incorrect. They said that [I] have full function. [I] disagree. [T]hey are not with me when I wake up in pain." (Docket Entry 1, p. 2). The Magistrate Judge construes this as a claim that the ALJ erred in determining Plaintiff's RFC and erred in assessing Plaintiff's credibility.

When determining a plaintiff's RFC, an ALJ must "first assess the nature and extent of [the Plaintiff's] . . . limitations . . . ." and must do so based on the entire record. 20 C.F.R. §§ 404.1545 and 416.945. When determining credibility of a plaintiff's statements about her symptoms, an ALJ must "consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's . . . symptoms" and "evaluate the intensity, persistence, and limiting effects of the . . . symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7P, 1996 WL 374186.

A plaintiff's symptoms will limit his ability to do basic work activities to the extent that the symptoms can reasonably be accepted as consistent with objective medical evidence. SSR 96-7P, 1996 WL 374186. However, if objective evidence alone does not reflect the severity of symptoms, the ALJ requires other evidence to determine the credibility of a plaintiff's statements

about her symptoms. SSR 96-7P, 1996 WL 374186. In those cases, the ALJ must consider: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication; (5) treatment; (6) measures to relieve pain or other symptoms; and (7) functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii).

Here, the record shows that the ALJ considered Plaintiff's limitations based on the entire record including pain questionnaires, function reports, hospitalization and medical records, consultative examiners' reports, medical source statements, work history report, medication lists, Plaintiff's statements, and the opinion of Plaintiff's fiancé. (Docket Entry 12, pp. 16-24). The ALJ noted Plaintiff's mild limitations in activities of daily living. (Docket Entry 12, p. 23). He noted that by Plaintiff's own report she could prepare meals, clean, drive, shop, check the mail, attend church, travel, watch television, listen to music, read, play games, visit with others, and attend to personal care tasks. (Docket Entry 12, p. 20). The ALJ also noted Plaintiff's lack of limitations in social functioning. (Docket Entry 12, p. 20). Finally, the ALJ noted Plaintiff's moderate limitations in concentration, persistence, or pace. (Docket Entry 12, p. 23). Therefore, the record provides substantial evidence that the ALJ considered Plaintiff's limitations prior to determining Plaintiff's RFC.

The record shows that the ALJ went on to evaluate Plaintiff's symptoms and credibility. He first found that Plaintiff had the severe impairments of depressive disorder and anxiety disorder. (Docket Entry 12, p. 16). He found that these "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Docket Entry 12, p. 25). Next, the ALJ went on to consider the seven factors listed above and found a lack of credibility on the part of Plaintiff. The ALJ reiterated Plaintiff's activities of daily living despite her limitations.

(Docket Entry 12, p. 25). He discussed precipitating and aggravating factors, including stress, changes in routine, and instances in which she is "in one of [her] moods." (Docket Entry 12, p. 25). The ALJ noted Plaintiff's medications, including Wellbutrin for depression. (Docket Entry 12, p. 26). The ALJ noted Plaintiff's fear of being alone and her resultant tendency to travel with her fiancé. (Docket Entry 12, p. 26). The ALJ also noted Plaintiff's reports of "no motivation and poor sleep." (Docket Entry 12, p. 26). Ultimately, the ALJ explained that the Plaintiff's reports were not credible "to the extent they [were] inconsistent with the . . . [RFC]." (Docket Entry 12, p. 26). The ALJ noted the inconsistency between Plaintiff's report that she can only pay attention for thirty minutes and her later report in which "she stated that she can pay attention if she wants to." (Docket Entry 12, p. 25). Moreover, throughout 2010 to 2012, Plaintiff demonstrated "normal interpersonal interactions" and appropriate mood, affect, and demeanor. (Docket Entry 12, p. 26). The ALJ summarized that "[t]he record simply does not support the [Plaintiff's] allegations of disability." (Docket Entry 12, p. 27).

Therefore, the record provides substantial evidence that the ALJ considered the entire record, explained the reasoning behind his credibility finding, and incorporated the factors in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii) into his RFC determination.

### D. Plaintiff's Fourth Claim

Plaintiff argues that her medical problems are "well within the guidelines." (Docket Entry 1, p. 2). The Magistrate Judge construes this as a claim that Plaintiff's problems fit squarely within the medical-vocational guidelines, also known as "the grid," and therefore mandate a finding of disability. 20 C.F.R. §§ 404.1569 and 416.969; *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). An ALJ may use "the grid" as a guide or may rely on it outright at step five of the sequential evaluation, depending on the plaintiff's limitations.

If a plaintiff has nonexertional limitations that "restrict[] . . . [her] performance of a full range of work at the appropriate [RFC]," then these limitations must be considered and the grid may be used as a guide. *Wright*, 321 F.3d at 616 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981)). Likewise, when a plaintiff has *only* nonexertional limitations, "the grid" does not "direct factual conclusions of disabled or not disabled . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 2. 200.00(e)(1). Nonexertional limitations include, inter alia, nervousness, anxiety, and depression. 20 C.F.R. §§ 404.1569a(c)(1)(i)-(iv) and 416.969a(c)(1)(i)-(iv).

Here, Plaintiff concedes that she has anxiety and depression. (Docket Entry 16, p. 2). In light of these nonexertional limitations, the guidelines would not direct the ALJ's determination at step five. Instead, the ALJ could use the guidelines as just that, a guide, in identifying whether jobs exist in the economy that accommodate Plaintiff's RFC and vocational profile. It bears repeating that at step four, the ALJ found that Plaintiff could perform her past relevant work. As such, that alone renders Plaintiff not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). Nonetheless, the ALJ went on to consider "[i]n the alternative" whether other jobs exist that Plaintiff could perform "considering . . . [Plaintiff's] age, education, work experience, and [RFC] . . . ." (Docket Entry 12, p. 29).

Therefore, the record provides substantial evidence that the ALJ appropriately considered Plaintiff's medical problems and appropriately considered the guidelines at step five to determine that other jobs exist in the national economy.

Ultimately, there is substantial evidence within the record to support the ALJ's findings of fact and the ALJ applied the correct legal standard.

## V. Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry 16) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

Under Rule 72(b), FED. R. CIV. P., the parties have fourteen (14) days, after being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S. 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this ____ day of May, 2015.

                                                                              s/Joe B. Brown_____
                                                                              Joe B. Brown
                                                                              U.S. Magistrate Judge